# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Stephen/Betty Pierson

  Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 08-32793

## DECISION AND ORDER

This cause comes before the Court after an Evidentiary Hearing on the Debtors' Objection to the Claim of Structured Investments Company, Claim No. 28. At the conclusion of the Hearing, the Court took the matter under advisement so as to afford the opportunity to further consider the evidence and arguments presented by the Parties. The Court has now had this opportunity, and for the reasons now explained, finds that the Debtors' Objection is Overruled as provided herein.

## FACTS

The Debtor, Stephen Pierson, is entitled to receive a military pension for the remainder of his life. The pension benefits are received on a monthly basis. In the year 2000, the Debtor answered an advertisement placed by the Claimant, Structured Investments Company, LLC. In the advertisement, Structured Investments offered individuals, such as Mr. Pierson, the opportunity to exchange their military pension benefits for a lump-sum payment.

On November 24, 2000, Mr. Pierson and Structured Investments executed an agreement, entitled "Annuity Utilization Agreement." In this Agreement it was set forth, in bold, that "This contract is not a loan." It was also provided that the law of California would govern all aspects of the Parties' Agreement.

In re: Stephen/Betty Pierson
Case No. 08-32793

Under their Agreement, Mr. Pierson agreed that he would pay Structured Investments the monthly sum of $849.00, the source of which was his monthly military pension. These payments would be made for 96 months, or 120 months if there was a default. In exchange, the Debtor received a lump-sum distribution from Structured Settlements in the amount $28,810.00. The Agreement provided that the Debtor intended to use the lump-sum distribution for the following purpose: "home improvements & debt consolidation."

The Parties later made two addenda to their Agreement. The first was made on April 6, 2005, and was based upon Mr. Pierson receiving an additional distribution of $15,156.00. In exchange, Mr. Pierson's monthly payment, as paid from his military pension, was increased to $966.78 per month. The Agreement's maturity date was also extended.

On June 21, 2007, a second addendum was made to the Parties' Agreement under which Mr. Pierson received a third distribution of $9,344.91. In exchange for this distribution, Mr. Pierson agreed to pay from his military pension the sum of $1,032.09 per month. In both of the addendums, it was provided that the terms of the Parties' original agreement remained in effect.

In order to effectuate their transaction, the Parties' Agreement provided that Mr. Pierson would establish a deposit account, and that he would cause his military pension to be placed into the account. The Agreement then set forth that Structured Investments was granted a security interest in any deposit account used by Mr. Pierson to maintain his military pension. Thereafter, consistent with their Agreement, Mr. Pierson's military pension was electronically transferred to a deposit account maintained in Mr. Pierson's name; once the funds were on deposit, Structured Investments caused a debit of the account in the amount contractually due under the Parties' Agreement.

On May 30, 2008, Mr. Pierson, together with his spouse, filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. In their bankruptcy filing, the Debtors

disclosed an unsecured obligation to Structured Settlements in the amount of $58,824.00. Since filing for bankruptcy relief, Mr. Pierson no longer has his military pension deposited into the account from which Structured Investments was making its debits. At the present, said deposit account holds little, if any, funds.

On October 2, 2008, the Claimant, Structured Investments, filed a proof of claim against the Debtors' estate in the amount of $84,631.38. In its proof of claim, the Claimant set forth that its claim was secured and that it arose from its "Annuity Utilization Agreement" with the Mr. Pierson, a copy of which was attached to its proof of claim. The Debtors filed an objection to the claim, asking that the claim be disallowed in its entirety because the "claim is void and unenforceable as a matter of law." (Doc. No. 94). At the Hearing held on their objection, the Debtors also asked that, if the claim of Structured Investments is allowed, the amount of the claim be reduced to the sum of $58,824.00, and that the claim be treated as unsecured. (Doc. No. 47).

After the Debtors filed their objection, settlement discussions between the Parties took place. Eventually a proposed Stipulation and Order was drafted and exchanged between the Parties. In substance, the proposed Stipulation and Order provided that the claim of Structured Investments would be treated as a separate class of unsecured creditors and that they shall receive the fixed amount of $40,000.00 on their claim. The Stipulation and Order, however, was never signed by any of the Parties or their legal counsel; nor was the Stipulation and Order ever entered by the Court.

## DISCUSSION

Before this Court is the Debtors' Objection to Claim No. 28 filed by the Claimant, Structured Investments Company. A determination concerning the allowance or disallowance of a claim against the estate is deemed to be a "core proceeding" over which this Court has been conferred with the jurisdictional authority to enter final orders and judgments. 28 U.S.C. § 157(b)(2)(B).

Page 3

In re: Stephen/Betty Pierson
Case No. 08-32793

A timely filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If, as here, an objection to a claim is made, subsection (b) of § 502 directs that a court is to determine the amount of the claim as of the date the petition was filed. Thereafter, § 502(b) provides that a court "shall allow such claim . . . except to the extent that" any of the exceptions set forth in subsection (b) are applicable.

The overall burden of persuasion to establish the allowance and amount of a claim in bankruptcy is placed upon the claimant. *Morton v. Morton (In re Morton)*, 298 B.R. 301, 307 (6th Cir. B.A.P. 2003). As an initial matter, however, Bankruptcy Rule 3001(f) provides that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." All indications show this Rule to be applicable, with the claim filed by Structured Investments complying with the applicable rules governing the filing of proofs of claim. For purposes of their objection, therefore, the Debtors are charged first with coming forth with evidence contradicting the proof of claim filed by Structured Investments. *See, In re Morton*, 298 B.R. at 307. ("debtor has the initial burden of establishing a colorable challenge to a properly filed proof of claim").

In their objection, the Debtors contested both the amount and the allowance of the proof of claim filed by Structured Investments. The Debtors also challenged the secured status of Structured Investments' claim. Because only allowed claims are entitled to be paid from estate assets, any determination concerning the amount and status of the claim held by Structured Investments only becomes relevant if its claim is first allowed. Accordingly, whether Structured Investments holds an allowed claim will be the first issue addressed.

Section 502(b) sets forth nine grounds for a claim's disallowance. The grounds for a claim's disallowance are exclusive and are contained in paragraphs (1) through (9) of § 502(b). *B-Line, LLC v. Kirkland (In re Kirkland)*, 379 B.R. 341, 345 (10th Cir. B.A.P. 2007). *See also Travelers Casualty*

Page 4

In re: Stephen/Betty Pierson
Case No. 08-32793

*& Surety Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 127 S.Ct. 1199, 1204, 167 L.Ed.2d 178 (2007) ("where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

The Debtors' objection to the proof of claim filed by Structured Investments relies on § 502(b)(1) as the basis for the claim's disallowance. Section 502(b)(1) provides, in relevant part: a creditor's proof of claim may be disallowed when "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . ." According to the Debtors, this provision is applicable because Structured Investments' "claim is void and unenforceable as a matter of law." (Doc. No. 94). As the legal basis for this position, the Debtors contend that their Agreement with Structured Investments was an impermissible assignment of Mr. Pierson's military pension, thereby making the transaction void under applicable law.

Assignments of personal earnings, whether it involves a military pension, as is the situation here, or simply a person's wages, are not favored. *See In re Moorhous*, 108 F.3d 51, 55-56 (4th Cir. 1997) (public policy prohibits assignment of military retired pay). *See also* O.R.C. 3121.31-33 (limiting wage assignments). Based on this, the permissibility of wage assignments and assignments of other personal earnings is normally governed by statute, with many statutes either prohibiting or constraining a person's ability to assign their wages. *In re Moorhous*, 108 F.3d 51 at 56 (absent authorizing statute, assignment of wages is invalid). For this purpose, and although not expressly cited, it may be assumed that the Debtors' position, regarding the unenforceability of their Agreement with Structured Investments, is founded upon the restraint on alienation contained in 37 U.S.C. § 701(c).[1]

---

[1]
With regards to veterans' benefits, an even more expansive restraint on alienation is found in 38 U.S.C.A. § 5301. Under paragraph (a)(1) of this provision, it is provided that:

> Payments of benefits due or to become due under any law administered by the

Page 5

Title 37 of the United States Code governs pay and allowances for members of the uniformed services. Section 701(c) of this Title provides that "[a]n enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void." For purposes of this statute, a military pension is considered "pay." *See Barker v. Kansas*, 503 U.S. 594, 605, 112 S.Ct. 1619, 118 L.Ed.2d 243 (1992) (holding that "military retirement benefits are to be considered deferred pay for past services."). Thus, consistent with the position advocated by the Debtors, any assignment of Mr. Pierson's military pension would be void.[2]

Insofar as it concerns the assignment of a military pension, however, Structured Investments does not take issue with the Debtors' reading of § 701(c). Instead, it is simply the position of Structured Investments that "the facts in the case at bar do not rise to an assignment of a military pension." (Doc. No. 139, at pg. 4-5). In taking this position, Structured Investments maintains that its Agreement with Mr. Pierson was structured in such a way so that it did create an actual assignment of Mr. Pierson's military retirement benefits. Central to this position, Structured Investments called attention to the fact that Mr. Pierson maintained ultimate control and authority

---

> Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

To qualify for a pension benefit under Title 38 of the United States Code, however, persons must generally be wartime veterans who have limited or no income, and who are age 65 or older, or, if under 65, who are permanently and totally disabled. At the Hearing, no indication was given that Mr. Pierson met either of these criteria; nor did the Debtors cite the Court to this provision. Consequently, it is assumed that this provision does not apply to Mr. Pierson.

2

This assumes that Mr. Pierson was an enlisted man. 37 U.S.C. § 701(a) provides that "[u]nder regulations prescribed by the Secretary of the military department concerned, a commissioned officer of the Army, Navy, Air Force, or Marine Corps may transfer or assign his pay account, when due and payable."

Page 6

In re: Stephen/Betty Pierson
Case No. 08-32793

over his military pension, with its security interest only attaching to the pension once the funds had been deposited into an account owned and maintained by Mr. Pierson.

Unless federal law compels a different result, property interests and rights of a debtor are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Nuvell Credit Corp. v. Westfall (In re Westfall)*, 599 F.3d 498, 502 (6th Cir. 2010). In this matter, no overriding federal interest was cited. Thus, the determination of whether there existed an actual assignment of Mr. Pierson's military pension for purposes of 37 U.S.C. § 701(c) will be determined by state law – in this case California law, since the Agreement between the Parties provided that the law of California would govern all aspects of the Agreement.

For purposes of California law, an assignment is defined as a "transfer or setting over of property, or of some right or interest therein, from one person to another . . . ." *Noble v. Draper*, 160 Cal.App.4th 1, 73 Cal.Rptr.3d 3, 12 (Cal.Ct.App.2008), *citing* Ballentine's Law Dictionary (3rd ed.1969). California law also provides that an assignment will ordinarily entail a transfer of title or ownership of property. *Recorded Picture Co. v. Nelson Entertainment, Inc.*, 53 Cal.App.4th 350, 368, 61 Cal.Rptr.2d 742, 752 (Cal.App.1997) (internal quotation and citation omitted). In determining whether an assignment exists, the intention of the parties, as manifested in the instrument, is controlling. *Chatten v. Martell*, 166 Cal.App.2d 545, 551, 333 P.2d 364, 368 (Cal.App. 1958); *McCown v. Spencer*, 8 Cal.App.3d 216, 219, 87 Cal.Rptr. 213, 225 (Cal.App. 1970).

In this matter, the Agreement executed by the Parties did not contain any express language of an assignment. Consequently, within the four corners of the Parties' Agreement, there is nothing which exhibits any intent of the Parties to create an assignment of Mr. Pierson's wages. Moreover, while it is the substance and not the form of a transaction which ultimately determines whether an assignment was intended, nothing within the structure of the Parties' Agreement indicates that the Parties intended to effectuate an assignment. *Id.* The basis for this conclusion is straightforward.

Page 7

In re: Stephen/Betty Pierson
Case No. 08-32793

As stated, an assignment will ordinarily transfer title and ownership of the assigned property. In a typical assignment, therefore, the assignor will not ordinarily retain any control over the assigned property. *See, e.g., Recorded Picture Co.* 53 Cal.App.4th at 368, 61 Cal.Rptr.2d at 752 (Cal. App.1997) ("Evidence of an equitable assignment must be clear and specific, and the assignor must not retain any control over the fund or any authority to collect."). Contrary to this attribute, however, Mr. Pierson retained full control over his military pension up until the time it was transferred to Structured Investments. In particular, Mr. Pierson was always free to direct the payor of his military pension to deposit the pension into an account over which Structured Investments had no interest and control. If this had been a true assignment, however, Mr. Pierson would have divested himself of this authority.

The Court does agree with the Debtors that the protections afforded by § 701(c) should be given an expansive reading so as to fulfill its purpose of protecting the income of services members from unscrupulous financial arrangements. However, with Mr. Pierson able to control, at all times, the disposition of his military pension, allowing Mr. Pierson to enter into a contractual relationship involving the use of his pension funds, once the funds had been distributed, does not frustrate the purpose of § 701(c).

To hold otherwise, would extend the reach of § 701(c) so as to protect the recipients of military pensions from the choices they make after the funds have been distributed to and then spent by the pensioner. The Debtors' position could also lead to unintended results. To give an example, if a military pensioner segregated his pension into a separate account, and then used a debit card tied to that separate account to pay for groceries, Mr. Pierson's reading of § 701(c) would hold that such a transaction would be later subject to avoidance at the option of the pensioner. Obviously, far from helping military pensioners, such a reading of § 701(c) would frustrate the ability of military pensioners from engaging in commerce as parties providing goods and/or services would be justifiably hesitant to enter into a contractual relationship with any person receiving a military

Page 8

pension. Consequently, in the absence of express language to the contrary, the Court is not willing to give § 701(c) such an expansive reading.

The cases cited by the Debtors do not compel a different result. First, at issue in the *In re Bowden* decision cited by the Debtors was whether there existed a trust of a kind sufficient to remove retirement pay and disability benefits from property of the estate. 315 B.R. 903, (Bankr. W.D.Wash. 2004). In this case, the issue of a trust has not been placed before the Court. The *In re Price* decision cited by the Debtors is also inapplicable. 313 B.R. 805 (Bankr. E.D.Ark. 2004)

In *In re Price*, a similar transaction as that involved in this matter was executed by the parties. After the debtor filed for bankruptcy, the creditor brought an adversary, placing this issue before the court: whether the creditor's claim arose from the debtor's embezzlement and larceny, thus giving rise to a nondischargeable debt, based upon the debtor having redirected his military pension to an account in which the creditor did not hold an interest. In this case, however, no embezzlement or larceny has been alleged on the part of the Debtors. The final decision, *In re Webb*, although more favorable to the Debtors' position, must also be rejected because, as with *In re Price*, it involved the question of nondischargeability and not the allowance of a claim. 376 B.R. 765, (Bankr. W.D.Okla. 2007).

In sum, with Mr. Pierson retaining ultimate authority and control over the disposition of his military pension, the Court cannot find that an assignment occurred for purposes of 37 U.S.C. § 701(c). Accordingly § 701(c) does not operate so as to invalidate the claim of Structured Settlements. As pointed out in a decision involving a very similar set of facts:

> By its language, 37 U.S.C. § 701(c) prohibits recipients of military pay such as Mr. Weber from assigning what they are due from the government to anyone else. Logically, that prohibition ends when the funds have been distributed to the recipient, in this case, Mr. Weber. What the recipient

Page 9

In re: Stephen/Betty Pierson
Case No. 08-32793

> chooses to do with the funds thereafter is not governed by Section 701. In other words, the anti-assignment statute applies to the transaction between the government and the debtor. When the monthly payment has been deposited in Mr. Weber's bank account, the transaction is concluded and the government has no further control over Mr. Weber's disposition of those funds. For that reason, 37 U.S.C. § 701(c) does not invalidate the contract Mr. Weber entered into with SICo.

*In re Weber*, Not Reported in B.R., 2009 WL 983311 *3 (Bankr. D.Neb. 2009).

The Debtors' next position against the claim filed by Structured Investments attacks both the claim's validity and the amount of the claim. At the Hearing held on their objection to Structured Investments' claim, the Debtors set forth that its claim should be disallowed, or its amount decreased, because the Parties' contract was one of adhesion, and enforcing its terms would be unconscionable. The gravamen of this position stems from what the Debtors view as an unconscionable disparity in the amount of consideration exchanged by the Parties, with Mr. Pierson obligated to repay an exorbitant sum when compared to the amount of funds he received from Structured Settlements.

Normally, the validity and enforceability of a contract is not determined by the adequacy of the consideration exchanged by the contracting parties; that is, where there is mutuality of consideration, courts do not weigh the quantum of the consideration so long as it has some value. *A.J. Industries, Inc. v. Ver Halen*, 75 Cal.App.3d 751, 761, 142 Cal.Rptr. 383 (1977); *Donovan v. RRL Corp.*, 26 Cal.4th 261, 291, 109 Cal.Rptr.2d 807 (2001). It is simply not the function of a court to relieve parties from the benefit of their bargain, despite the fact that one of the parties may later have regrets.

In limited circumstances, however, a gross disparity in the values exchanged by the contracting parties may be considered with regards to the issue raised by the Debtors concerning

Page 10

08-32793-ssj    Doc 174    FILED 03/25/11    ENTERED 03/25/11 16:38:45    Page 10 of 18

the unconscionability of Mr. Pierson's contract with Structured Settlements. *Id.* As set forth in the case of *Carboni v. Arrospide*:

> In an ordinary contract for a loan of money, the debtor promises to repay a sum larger than the amount advanced; but the repayment is to be made at a later date and the difference is interest for the use of the money lent. The value of this use is as much a matter for the agreement of the parties as is the value of a chattel. Therefore, in the absence of a usury statute, a contract that requires the payment of a very high rate of interest will be enforced, *up to the point at which 'unconscionability' becomes an operative factor*.

2 Cal.App. 4th 76, 2 Cal.Rptr.2d 845 (1991), *citing* 1 Corbin, Contracts, (1963), § 129, p. 556.

Under California law, the doctrine of unconscionability operates an affirmative defense to the enforcement of a contract or a term thereof. The unconscionability defense is governed by statute, with § 1670.5(a) of California's Civil Code providing:

> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

For purposes of this statute, unconscionability has both a substantive and procedural element. *Gentry v. Superior Court*, 42 Cal.4th 443, 468-469 (2007). A sliding scale is then applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required, and vice versa. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114, 99 Cal.Rptr.2d 745 (2000).

As put forth by the Debtors, procedural unconscionability will frequently involve a contract of adhesion which is defined as a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the

Page 11

In re: Stephen/Betty Pierson
Case No. 08-32793

opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 171 Cal.Rptr. 604, 623 P.2d 165 (1981). However, a contract of adhesion is not *per se* procedurally unconscionable under California law. Instead, the focus of whether a contract is procedurally unconscionable will concern two overall factors: "oppression" and "surprise." *Parada v. Superior Court*, 176 Cal.App. 4th 1554, 1568 (2009).

For this purpose, the concept of a procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party. *Jones v. Wells Fargo Bank*, 12 Cal.App.4th 1527, 1539, 5 Cal.Rptr.3d 835 (2003). By comparison, procedural oppression refers not only to an absence of power to negotiate the terms of a contract, but also to the absence of reasonable market alternatives. *Morris v. Redwood Empire Bancorp*, 128 Cal.App. 4th 1305, 1320, 27 Cal.Rptr.3d 797 (2005). For the latter consideration, the California Supreme Court commented: "In many cases of adhesion contracts, the weaker party lacks not only the opportunity to bargain but also any realistic opportunity to look elsewhere for a more favorable contract; he must either adhere to the standardized agreement or forego the needed service." *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699, 131 Cal.Rptr. 882, 552 P.2d 117 (1976).

In this matter, it is hard to see how any of the terms of the Parties' Agreement were procedurally oppressive or could have taken Mr. Pierson by surprise. First, the basis for Mr. Pierson entering into his agreement with Structured Settlements arose not from the need to obtain basic necessities, but rather out of a desire to make home improvements and to consolidate his debts. Mr. Pierson, thus, had the opportunity to weigh his options. In this way, no evidence exists that Mr. Pierson either searched or considered extensively other options to obtain a loan for the purpose of making home improvements. It was also Mr. Pierson who sought out the services of Structured Settlements.

Page 12

In re: Stephen/Betty Pierson
Case No. 08-32793

Second, inapposite to the existence of a procedural surprise, Structured Investments had Mr. Pierson meticulously initial in their Agreement most of what could be considered the contract's more onerous terms. Many of the terms were also set forth in bold or all capital letters. Additionally, a summary sheet, outlining the terms of the Parties' Agreement, was also provided to Mr. Pierson. Accordingly, for these reasons, the evidence simply cannot support that the terms of Mr. Pierson's transaction with Structured Settlements could have caused him any surprise.

Likewise, the Court is unable to discern any appreciable degree of substantive unconscionability. When evaluating the substantive unconscionability of a contract, California law requires that the focus should be on whether the agreement creates "overly harsh" or "one-sided" results so as to "'shock the conscience." *Bruni v. Didion*, 160 Cal.App. 4th 1272, 1288-89, 73 Cal.Rptr.3d 395 (2008). In this regard, it is important to note that this standard is not synonymous with "unreasonable." In *Walnut Producers of California v. Diamond Foods, Inc.*, it was cautioned:

> Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis. "With a concept as nebulous as 'unconscionability' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience.

187 Cal.App.4th 634, 647-48, 114 Cal.Rptr.3d 449 (2010).

In this case, the terms of the Parties' Agreement were certainly one-sided, in favor of Structured Settlements. To use the Parties' first transaction as an example, Mr. Pierson received a lump-sum distribution from Structured Settlements in the amount $28,810.00. In exchange, Mr. Pierson agreed to repay Structured Settlements the sum of $849.00 per month for a term of

Page 13

In re: Stephen/Betty Pierson
Case No. 08-32793

96 months, an amount totaling $81,504.00. Thus, over the course of eight years, Mr. Pierson agreed to repay Structured Settlements almost three times the amount he received as a lump-sum distribution.

Yet, while this arrangement cannot be called prudent, nothing about the Parties' Agreement particularly shocks the conscience. To begin with, while the consideration promised by Mr. Pierson significantly exceeded the consideration he received from Structured Settlements, this disparity must be considered in light of these two factors: (1) the time value of money; and (2) risk, because Structured Settlements was only entitled to receive payment so long as Mr. Pierson received his military pension. In addition, with their being no actual assignment of his pension, Structured Settlements' risk was heightened because Mr. Pierson had the ability to redirect his military pension to an account in which Structured Settlements did not maintain an interest.

However, even setting aside these considerations, Mr. Pierson's own actions show the lack of any substantive unconscionability within the Parties' Agreement. After having had the opportunity to observe the demeanor of Mr. Pierson at the Hearing held on the Debtors' objection, the Court was left with the firm conviction that Mr. Pierson is completely in charge of his mental facilities, and has a native intelligence as to basic financial transactions. Yet, over the course of more than two years, Mr. Pierson entered into not one or two, but rather three Agreements with Structured Settlements. Moreover, the purpose of each of these transactions was to obtain funds for home improvements and debt consolidation, purposes which, as previously pointed out, are not normally of an immediate necessity.

Under these conditions, it may be fairly stated that Mr. Pierson, after rationally weighing his options, found his transactions with Structured Settlements to be advantageous. As such, the

Page 14

In re: Stephen/Betty Pierson
Case No. 08-32793

Court can hardly see how Mr. Pierson's repeated transactions with Structured Settlements were so oppressive so as to shock the conscience.

On whole, therefore, the Parties' Agreement cannot be said to have any appreciable degree of substantive unconscionability. Nor, as already explained, does the Parties' Agreement have any meaningful level of procedural unconscionability. Accordingly, as applied to § 502(b)(1), there is no basis under "applicable law" to either disallow or adjust the amount of the proof of claim submitted by Structured Settlements.

The Debtors' last point in opposition to the claim of Structured Settlements concerns the secured status of its claim. According to the Debtors, the claim should be deemed to be an entirely unsecured claim. The Court agrees.

Subject to some exceptions, not applicable here, the Bankruptcy Code allows a Chapter 13 debtor to "bifurcate" a secured claim by reducing the value of the secured claim to the value of the collateral securing the claim. *See* 11 U.S.C. §§ 506(a), 1322(b)(2), and 1325(a)(5)(B). The remainder of the claim is then treated as a general unsecured claim. This process is often referred to as a "cramdown" or "cramming down" the secured claim.

In this matter, the secured interest claimed by Structured Settlements is asserted against just a single deposit account held in the name of Mr. Pierson. For this account, the Parties agree that the account holds little if any money. As such, the Debtors are entitled to treat the claim of Structured Settlements as unsecured.[3]

---

[3] There would also appear to be a question as to whether Structured Settlements was even entitled to hold a security interest in any deposit account maintained by Mr. Pierson. Under California's Article 9, it is provided in the provision concerning scope:

Page 15

In re: Stephen/Betty Pierson
Case No. 08-32793

Before concluding, however, one final issue needs to be addressed. At the Hearing held on the Debtors' objection to claim, an issue was raised as to the enforceability of the proposed Stipulation and Order that was drafted and exchanged between the Parties. The Court finds the proposed order to be unenforceable. First, it was not executed by either of the Parties or their legal counsel. But more importantly, the proposed order was never even submitted to the Court for entry. *See* FED.R.BANK.P. 5003 ("A judgment or order is effective when entered under Rule 5003.").

In summation, it is the holding of this Court that the proof of claim filed by the Creditor, Structured Settlements, in the amount of $84,631.38 and set forth as a secured claim should be allowed for the full amount claimed. To this extent, the Debtors' Objection to the Claim of Structured Investments Company, Claim No. 28, will be Overruled. The claim of Structured Settlements, however, not attaching to any collateral, will only be allowed as a general unsecured claim.

---

> (d) This division does not apply to any of the following:
>
>> (13) An assignment of a deposit account in a consumer transaction, but Sections 9315 and 9322 apply with respect to proceeds and priorities in proceeds.

Cal. Com.Code § 9109.

For purposes of this provision, a "deposit account" "means a demand, time, savings, passbook, or similar account maintained with a bank. The term does not include investment property or accounts evidenced by an instrument." Cal. Com.Code § 9102(a)(29).

In turn, a "consumer transaction" "means a transaction in which (i) an individual incurs an obligation primarily for personal, family, or household purposes, (ii) a security interest secures the obligation, and (iii) the collateral is held or acquired primarily for personal, family, or household purposes. The term includes consumer-goods transactions." Cal. Com.Code § 9102(a)(26).

Page 16

In re: Stephen/Betty Pierson
Case No. 08-32793

      In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

      Accordingly, it is

      **ORDERED** that, pursuant to 11 U.S.C. § 502, the Creditor, Structured Investments Co., LLC, is hereby deemed to hold an allowed, unsecured claim against the Debtors' estate in the amount of $84,631.38.

      **IT IS FURTHER ORDERED** that, as provided in the above order, the Debtors' objection to the proof of claim filed by Structured Investments Company, Claim No. 28, be, and is hereby, OVERRULED.

      Dated: March 25, 2011

                                            Richard L. Speer
                                            United States
                                            Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 25th day of March, 2011 to:

Structured Investments Co., LLC
c/o Kurtzman & Carson
Attn: Travis Vandell
2335 Alaska Avenue
El Segundo, CA 90245

Henry J. Geha, III
Roetzel & Andress
One SeaGate, 17th Floor
Toledo, OH 43604

Henry J. Geha, III
Roetzel & Andress
One SeaGate, 17th Floor
Toledo, OH 43604

Betty J. Pierson
2646 Wyndale Rd
Toledo, OH 43613-3237

Stephen G. Pierson
2646 Wyndale Rd
Toledo, OH 43613-3237

Gordon R. Barry
420 Madison Ave
1010 Ohio Bldg
Toledo, OH 43604

Elizabeth A Vaughan
Office of the Chapter 13 Trustee
316 N. Michigan Street
Suite 501
Toledo, OH 43604

/s/ Sherry Heyman
Deputy Clerk, U.S. Bankruptcy Court